**GENERAL CONFERENCE OF SEVENTH–DAY ADVENTISTS (RISK MANAGEMENT SERVICES), formerly known as Gencon Risk Management Services, Adventist Health Systems/U.S. and Adventist Health Systems/U.S. Liability Trust, Plaintiffs,**

**v.**

**AON REINSURANCE AGENCY, INC., formerly known as Cole, Booth, and Potter, Inc., formerly known as Alexander & Alexander of New York, Inc., formerly known as Reed Stenhouse Inc. of New York, formerly known as Sten–Re, Cole, and Associates, Inc., Richard Cole and Thomas Simone, Defendants.**

**No. 92 Civ. 8090 (WCC).**

United States District Court, S.D. New York.

July 16, 1993.

Kramer Martynetz & Verbesey, New York City, for plaintiffs Gencon, AHS, AHS Trust; Myron C. Martynetz, of counsel.

Chadbourne & Parke, New York City, for defendants AON Reinsurance Agency, Inc., Cole, Booth and Potter, Inc., Sten–Re, Cole and Associates, Inc., Richard Cole and Thomas Simone; Charles K. O'Neill, Maria E. Cannon, of counsel.

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge:

Plaintiffs, General Conference of Seventh–Day Adventists Risk Management Services, f/k/a/ Gencon Risk Management Services ("Gencon"); Adventists Health Systems/U.S. ("AHS"); and Adventists Health Systems/U.S. Liability Trust ("AHS–Trust"), bring this action for indemnity and contribution against AON Reinsurance Agency, Inc. ("AON"), Richard Cole, and Thomas Simone. The action is presently before the Court on defendants' motion to dismiss pursuant to Rule 12(b)(6), Fed.R.Civ.P. The motion is granted in part and denied in part.

## BACKGROUND

AHS is an affiliate of the General Conference of Seventh–Day Adventists Church ("the Church") responsible for the supervision and maintenance of the Church's health care staff and facilities. Gencon is another affiliate of the Church which for all relevant periods served as AHS's insurance agent. Sten–Re, Cole and Assoc., Inc. ("Sten–Re") was an insurance broker and consultant retained by Gencon and AHS to obtain additional insurance coverage for AHS. Sten–Re has since been acquired by defendant AON. The gravamen of plaintiffs' complaint is that Sten–Re failed to procure a policy with sufficient breadth of coverage and therefore defendants must indemnify or contribute to an uninsured liability that was incurred by an AHS doctor and was paid by plaintiffs.

Sten–Re was retained to obtain an insurance contract that would retroactively cover AHS facilities, employees, and physicians for liabilities, in excess of existing policy limits, arising from a group of known claims. In late 1981 or early 1982, Sten–Re arranged for the purchase of an insurance policy from St. Paul Surplus Lines Insurance Co. ("St. Paul Insurance"). The policy insured AHS for its liabilities, in excess of its existing policies for the years in question and a $1,000,000 self insurance retention, up to a maximum of $10,000,000.

In 1984, *Barenbrugge v. Nancy Rich, M.D.*, one of the claims enumerated in the St. Paul insurance contract, went to trial and a judgment was entered against Dr. Nancy Rich, a staff physician at an AHS hospital. Since AHS's primary insurance coverage for the relevant period had been exhausted, AHS submitted the claim to St. Paul Insurance who refused to cover it because the policy did not extend to licensed physicians or surgeons acting within the scope of their duties. As a result, on November 13, 1986, AHS paid $2,268,811.03 on behalf of Dr. Rich to satisfy the judgment;[1] $1,268,811.03 of this amount would have been paid by St. Paul Insurance had the policy acquired by Sten–Re covered liabilities incurred by physicians. In August, 1989, AHS accepted $800,000 from Gencon in settlement of all claims against Gencon arising out of the refusal of St. Paul Insurance to cover the *Barenbrugge* judgment. Now AHS and Gencon unite to bring this action for indemnity and contribution against AON and the individual defendants.

## DISCUSSION

On a motion to dismiss we accept all allegations in the complaint as true, and dismiss only if, after drawing all inferences in plaintiffs' favor, it is clear that they are not entitled to relief. *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir.1989); *see Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Defendants argue that plaintiffs' action is in essence one for breach of contract and therefore is barred by New York's six-year statute of limitations applicable to such claims. Although the complaint does allege facts that would be consistent with a claim for breach of contract, the only claims for relief alleged by plaintiffs are for indemnity and contribution. Indemnity and contribution claims stand independent of the underlying cause of action and carry their own six-year statute of limitations which begins to run upon payment of the claim to the third party. *McDermott v. City of New York*, 50 N.Y.2d 211, 215–18, 428 N.Y.S.2d 643, 644–46, 406 N.E.2d 460, 461–62 (1980). As alleged, these claims are timely.

Defendants contend that the facts alleged do not support claims for indemnity and con-

---

1. The payment was made through plaintiff AHS–Trust, a trust established by AHS.

tribution. With the exception of Gencon's contribution claim, which is dismissed, we disagree.

*I. The Indemnity Claims*

■ When, as in the case at bar, there is no express contractual indemnification provision, an implied right to indemnification may be based either on an "implied contract theory" or an "implied-in-law theory". *Peoples' Democratic Republic of Yemen v. Goodpasture, Inc.,* 782 F.2d 346, 351 (2d Cir.1986). Under the former theory, a right to indemnity may be implied from a special contractual relationship between the parties. On the other hand, "indemnity implied in law" is a tort-based doctrine which applies when there is a great disparity in the fault of two tortfeasors and one tortfeasor has paid for a loss that was primarily the responsibility of the other. *Id.*

■ In support of their motion, defendants contend only that the facts set out in the complaint do not support a right to indemnification implied in law. They argue that, since there was no direct duty running from Sten–Re to Dr. Rich, Sten–Re and plaintiffs were not "joint tortfeasors". Defendants conclude that they have no implied-in-law obligation to indemnify plaintiffs. Def. Br. in Reply at 8–10. However, defendants make no argument and cite no authority which would allow us, as a matter of law, to find that there is no right to indemnification implied in the contractual relationship between the parties.

In *Bellevue S. Assoc. v. HRH Constr. Corp.,* 78 N.Y.2d 282, 574 N.Y.S.2d 165, 579 N.E.2d 195 (1991), the New York Court of Appeals held that, although an implied right to indemnity exists against "active" tortfeasors in favor of "passive" tortfeasors (implied-in-law theory), a right to indemnity may also be implied from a *separate* duty owed by the indemnitee to the indemnitor (implied contract theory). *Id.* 574 N.Y.S.2d at 171, 579 N.E.2d at 201. In *Bellevue,* a building owner recovered from a flooring subcontractor for breach of contract. Although there was no direct duty flowing from the tile supplier to the building owner, the court found that the tile supplier had an implied duty to indemnify the subcontractor. The Court reasoned that the warranty of merchantability, implied in contracts for the sale of goods by N.Y.U.C.C. § 2–314 (McKinney 1964), created an implied right of indemnity in favor of the purchaser. In the case at bar, the relationships between plaintiffs and Sten–Re are not sufficiently detailed in the complaint to enable us to determine whether an implied right of indemnity flowed therefrom. Therefore, we may not dispose of plaintiffs' indemnity claims as a matter of law. *See Nieves v. Douglas Steamship, Ltd.,* 451 F.Supp. 407, 410 (S.D.N.Y.1978) (failure to submit proof of facts indicating the nature and scope of a business relationship from which indemnity might be implied precluded resolving issue upon summary judgment); *see also Flickinger v. Harold C. Brown & Co., Inc.,* 789 F.Supp. 616, 622 n. 7, 622–23 (W.D.N.Y.1992) (party to whom a contract duty was delegated had implied obligation to indemnify delegator, when both delegator and delegatee were liable to a third party for breach of contract).

Since plaintiffs' cause of action for implied contractual indemnity survives this motion to dismiss, we need not reach defendants' argument that plaintiffs have no right to indemnity implied in law. Defendants' motion to dismiss the indemnity claims is denied.

*II. The Contribution Claims*

■ Defendants make two alternative arguments which together require that we dismiss Gencon's contribution claim. First, if the underlying settled claim between AHS and Gencon, on which Gencon now seeks contribution, was one for breach of contract, then the contribution claim must be dismissed because New York law forbids contribution claims when the underlying liability is for breach of contract. *Board of Educ. v. Sargent, Webster, Crenshaw & Folley,* 71 N.Y.2d 21, 523 N.Y.S.2d 475, 517 N.E.2d 1360 (1987). Second, if the underlying claim sounds in tort, then the contribution claim must be dismissed because Gencon settled its claim with AHS and New York law forbids contribution claims by tortfeasors who have obtained a release. N.Y.Gen.Oblig.Law § 15–108(c) (McKinney 1989) ("A tortfeasor

who has obtained his own release from liability shall not be entitled to contribution from any other person"). Defendants therefore submit that Gencon's contribution claim should be dismissed whether the underlying claim sounded in tort or contract.

■ Plaintiffs offer no arguments in support of Gencon's contribution claim but instead petition the Court to allow Gencon to state a claim directly against·defendants for breach of contract. Pl.Br. in Op. at 11. However, even if we were to allow plaintiffs to amend their complaint, a claim for breach of contract would be barred by New York's six-year statute of limitations for such actions. N.Y.Civ.Prac.L. & R. § 213(2) (McKinney 1990).

The complaint states that Sten–Re was retained by AHS and Gencon to acquire an insurance contract with a particular breadth of coverage and that in late 1981 or early 1982 Sten–Re procured a policy with inadequate coverage and therefore breached its agreement with plaintiffs. The statute of limitations on a breach of contract claim begins to run at the time of the breach. *Ely–Cruikshank Co., Inc. v. Bank of Montreal,* 81 N.Y.2d 399, 599 N.Y.S.2d 501, 615 N.E.2d 985 (N.Y.Ct.App.1993). In *Ely–Cruikshank,* the Court reasoned that under N.Y.Civ. Prac.L. & R. § 203(a) (McKinney 1990), a statute of limitations begins to run when the cause of action accrues, and since nominal damages are always available for breach of contract, a cause of action accrues at the time of the breach. *Id.; see National Life Ins. Co. v. Frank B. Hall & Co., Inc.,* 67 N.Y.2d 1021, 503 N.Y.S.2d 318, 494 N.E.2d 449 (1986).[2] The complaint alleges that defendants breached their agreement with plaintiff in 1982 at the very latest and this action was filed in 1992. Therefore, even if plaintiffs were permitted to amend their pleading to state a claim for breach of contract, the cause of action would be time barred.[3]

AHS's contribution claim is likely to be meritless as well. If, as we suspect, AHS was contractually obligated to indemnify Dr. Rich for the judgment against her, then, as discussed above, *Sargent,* 523 N.Y.S.2d 475, 517 N.E.2d 1360 would require that AHS's contribution claim be dismissed. However, the reason for AHS's payment of the judgment is not clear from the complaint. Moreover, the New York Court of Appeals has recently upheld a contribution claim where the underlying cause of action was one where the parties' relationship was initially formed by contract, but there was a claim that the contract was performed negligently. *Sommer v. Federal Signal Corp.,* 79 N.Y.2d 540, 551, 583 N.Y.S.2d 957, 961, 593 N.E.2d 1365 (1992). Since pursuant to this motion to dismiss we rely only on the allegations in the complaint and draw all inferences in plaintiffs' favor, we can not determine the validity of AHS's contribution claim until the nature

---

**2.** Plaintiffs cite N.Y.Civ.Prac.L. & R. § 206(b) (McKinney 1990), which states:

> **(b) Based on misconduct of agent.** Where a judgment is entered against a principal in an action based upon an injury resulting from the act or omission of his deputy or agent, the time within which an action by the principal against the deputy or agent to recover damage by reason of such judgment must be commenced shall be computed, from the time when the action against the principal was finally determined....

Plaintiffs argue that under this provision, the statute of limitations on their contract action against defendants began to run when AHS paid the judgment against Dr. Rich. However, in *National Life Ins.,* the New York Court of Appeals held that the statute of limitations on a breach of contract and malpractice action against an insurance broker was six years and that it began to run upon the broker's breach.

**3.** Plaintiffs argue that New York's continuing treatment doctrine, generally applied to actions

for medical or legal malpractice, should be extended to their action for insurance broker malpractice. *See Richardson v. Orentreich,* 64 N.Y.2d 896, 898–99, 487 N.Y.S.2d 731, 732, 477 N.E.2d 210 (1985) (applying continuing treatment doctrine to medical malpractice); *Muller·v. Sturman,* 79 A.D.2d 482, 437 N.Y.S.2d 205, 207–08 (4th Dep't 1981) (applying continuing treatment doctrine to legal malpractice); *Luk Lamellen U. Kupplungbau v. Lerner,* 166 A.D.2d 505, 560 N.Y.S.2d 787, 788 (2d Dep't 1990) (same). However, the continuing treatment doctrine has not been extended to actions against insurance brokers. *Flora's Card Shop, Inc. v. Paul Krantz & Co., Inc.,* 111 Misc.2d 907, 445 N.Y.S.2d 392, 393–94 (Sup.Ct. New York County 1981), *aff'd,* 91 A.D.2d 938, 458 N.Y.S.2d 880 (1st Dep't 1983) (the trust reposed in an insurance broker is a business trust, not a professional trust, and thus does not justify the extension of the continuing treatment doctrine).

of the underlying cause of action is more clear.

## CONCLUSION

For the foregoing reasons Gencon's contribution claim is dismissed and the remainder of defendants' motion is denied.

SO ORDERED.